UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FRED NEKOUEE, individually,           :
                                    :
             Plaintiff,          :
                                    :
vs.                                :   Case No. 4:19-cv-01696
                                    :
SERVE ALL HOSPITALITY LLC,    :
a Missouri limited liability company   :
                                    :
             Defendant.      :
_____/

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, SERVE ALL HOSPITALITY LLC, a Missouri limited liability company (sometimes referred to as "Defendant"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.     Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.     Defendant's property, Quality Inn & Suites, has an address of West Outer Road, Arnold, Missouri 63010, and is located in Jefferson County.

3.     Venue is proper in the Eastern District of Missouri because the situs of the property lies in this judicial district.   The Defendant's property is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

6.      Defendant is responsible for complying with the obligations of the ADA.

7.      The place of public accommodation that the Defendant owns, operates, leases or leases to is known as Quality Inn & Suites & Suites located at 1970 Craig Road, St. Louis, Missouri 63146 ("Quality Inn & Suites").

8.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

9.      Mr. Nekouee travels to the St. Louis metropolitan area every three to six months to visit heavy equipment dealerships, where he assists his brother to compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment.

10.      Plaintiff Fred Nekouee has visited the St. Louis area near the Quality Inn & Suites in June 2015; June 2016; September 2017; December 2017; March 2018; July 2018; September 2018; January 2019; and May 2019.

11.      Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Quality Inn & Suites which forms the basis of this lawsuit on January 28, 2019 with a check out on January 29, 2019, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to the heavy equipment dealerships he visits in the St. Louis area.  He has definite plans to return to the St. Louis area in late

September or early October of 2019.

12.     The Plaintiff, Mr. Nekouee, likes to stay at moderately-priced hotels like the Quality Inn & Suites near the heavy equipment dealerships he visits.

13.     For the reasons set forth in paragraphs 9 through 12 and 22 of this Complaint, Mr. Nekouee plans to return to the Quality Inn & Suites.

14.     The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, in access aisles and of walking surfaces, and have impaired his use of the restrooms in the Quality Inn & Suites.

15.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

16.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

17.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

18.     On his visit to the Quality Inn & Suites, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles and walking surfaces (sidewalks).

19.     The Plaintiff encountered barriers to access the men's restroom in the lobby of the Quality Inn & Suites; and so, he looked at the women's restroom in the lobby where he also observed barriers to access.

20.     The Plaintiff is deterred from visiting the Quality Inn & Suites, even though the

Quality Inn & Suites is close to the heavy equipment dealerships he visits in the area, because of the difficulties he will experience in the restrooms, lobby, accessible room #103, fitness area, pool area, parking lot, access aisles and walking surfaces (sidewalks) until the property is made accessible to him in a wheelchair.

21.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 27 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

22.     Fred Nekouee desires to visit the Quality Inn & Suites not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

23.     The Defendant has discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

24.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

25.     Preliminary inspections of the Quality Inn & Suites have shown that violations exist.

26.     The conditions that exist at the Quality Inn & Suites are set forth in each romanette

(i) of each lettered subparagraph of paragraph 27 of this Complaint.

27.   The violations that Fred Nekouee personally encountered or observed on his visit to the Quality Inn & Suites include, but are not limited to:

**PARKING AREA**

a.  (i) In the parking lot, the front (closer to the building) and back sections of the parking space for disabled patrons shown in the photograph below have a running slope steeper than 1:48 (2%).   (ii) The front and back sections of this parking space has a running slope steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. (iii) The Plaintiff encountered these steep slopes in this parking space, and it made his wheelchair unstable.   (iv) The action required to reduce the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.



b.   (i) In the parking lot, the parking space for disabled patrons with van access has a running slope steeper than 1:48 (2%).    (ii) This parking space for disabled patrons has a running slope as steep as about 1:27.8 (3.6%) and steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff observed the slope of this parking space, and it deters him from visiting Quality Inn & Suites.   (iv) The action required to reduce the slope in this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

c.   (i) In the parking lot, the change in level of the sidewalk on the accessible route to the entrance of the Quality Inn & Suites is greater than 0.25 inches.   (ii) This change in level of this walking surface is about 1 inch and greater than the maximum allowed change in level of 0.25 inches, in violation of Federal Law 2010, ADAAG § 502.4 and 303.2.   (iii) While moving in his wheelchair, the plaintiff encountered this change of level, and he required assistance to move over it in his wheelchair.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.

d.   (i) In the parking lot, the running slope of the access aisle serving the parking space for disabled patrons has a running slope that is steeper than 1:48 (2%).   (ii) This access aisle has a running slope steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The Plaintiff encountered the running slope in this access while moving in his wheelchair, and it made his wheelchair unstable.   (iv) The action required to reduce the slope of this access aisle is easily accomplishable and able to be carried out without much difficulty or expense.

e.   (i) The running slope of the access ramp shown in the photograph below is steeper

than 1:12 (8%).   (ii) The running slope of this access ramp is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   (iii) The Plaintiff encountered this access ramp while moving in his wheelchair, and due to its steep slope, he required assistance to ascend and to descend this ramp.   (iv) The action required to reduce the slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.



f.   (i) The cross slope of the walking surface toward the entrance door and to the right of the door as one faces the building is steeper than 1:48 (2%).   (ii) The cross slope of this walking surface is as steep as about 1:25.6 (3.9%) and steeper than a cross slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 405.3.   (iii) While moving in his wheelchair, the Plaintiff encountered this steep cross slope, and it made his wheelchair unstable.   (iv) The action required to reduce the cross slope of this walkway is easily

accomplishable and able to be carried out without much difficulty or expense.

g.   (i) The cross slopes of the curb ramp sides or flares of the access ramp shown in the photograph below subparagraph (e) above is steeper than 1:10 (10%).   (ii) These curb ramp sides or flares are as steep as about 1:2.3 (43.3%) and steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   (iii) The Plaintiff observed these curb ramp sides, and he had to avoid them so that his wheelchair would not overturn.   (iv) The action required to reduce the slope of these curb ramp sides is easily accomplishable and able to be carried out without much difficulty or expense.

h.   (i) The change in level of the walking surface on the accessible route to the entrance of the Quality Inn & Suites is greater than 0.25 inches at the intersection of the black top to the cement shown in the photograph below.   (ii) This change in level of this walking surface is about 1 inch and greater than the maximum allowed change in level of 0.25 inches, in violation of Federal Law 2010, ADAAG § 502.4 and 303.2.   (iii) While moving in his wheelchair, the Plaintiff encountered this change of level, and he required assistance to move over it in his wheelchair.   (iv) The action required to reduce this change of level is easily accomplishable and able to be carried out without much difficulty or expense.



**ENTRANCE DOOR**

i.   (i) The rain cover on the card reader at the side entrance to the Quality Inn & Suites requires tight grasping and pinching to operate.   (ii) The operation of this rain cover requires tight grasping and pinching, in violation of Federal Law 2010, ADAAG §§ 606.4 and 309.4.   (iii) The Plaintiff could not operate this rain cover with a closed fist or loose grip.   (iv) The action required to replace this rain cove or to add a handle to it is easily accomplishable and able to be carried out without much difficulty or expense.

**LOBBY**

j.   (i) The cash inlet of the vending machine in the lobby is higher than 48 inches above the floor.   (ii) The cash inlet on this vending machine is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG 308.2.2.   (iii) The Plaintiff tried but could not use this cash

inlet due to its height above the floor.   (iv) The action required to replace this vending machine is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN THE LOBBY**

k.   (i) The door force needed to open the door to the men's restroom in the lobby is greater than 5 pounds.   (ii) The door force needed to open this door is about 9.5 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   (iii) The Plaintiff required assistance in his wheelchair to open this door and to enter this restroom due to the force necessary to open this door.

l.   (i) The lavatory drain and supply pipes under the sink in the men's restroom are not insulated.   (ii) As shown in the photograph below, these drain and supply pipes under this sink are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5. (iii) The Plaintiff used this sink and he risked skin burns and injury to his legs due to the lack of insulation on these drain and supply pipes under the sink.   (iv) The action required to insulate these pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.



m.  (i) In the men's restroom in the lobby, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.  (ii) The bottom edge of this mirror's reflecting surface is about 49 inches above the finish floor and higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.  (iii) Due to the height of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror from his wheelchair.  (iv) The action required to lower this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

n.  (i) In the men's restroom in the lobby, the operation of the door knob and lock require tight grasping, pinching, or twisting of the wrist.  (ii) The operation of this door knob and lock require tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.  (iii) The Plaintiff could not operate this door knob and lock with a closed fist or loose grip.  (iv) The action required to replace this door knob and lock is easily accomplishable and able to be carried out without much

difficulty or expense.

o.   (i) In the men's restroom in the lobby, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is located about 63 inches above the finish floor and higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4. (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from visiting Quality Inn & Suites.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

p.   (i) In the men's restroom in the lobby, the liquid soap dispenser is more than 48 inches above the floor.   (ii) This liquid soap dispenser is higher than 48 inches above the finish floor and outside the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to its height above the floor, the Plaintiff could not reach this dispenser to obtain soap from it.   (iv)   The action required to relocate this soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM IN THE LOBBY**

q.   (i) The force needed to open the door to the women's restroom in the lobby is greater than 5 pounds.   (ii) The force needed to open this door is abut 10 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010 ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff required assistance to enter this women's restroom.   (iv) The action required to adjust the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

r.    (i) The lavatory drain and supply pipes under the sink in the women's restroom are not insulated.   (ii) These drain and supply pipes under this sink are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5.   (iii) The Plaintiff observed this lack of insulation, and it deters him from staying at the Quality Inn & Suites.   (iv) The action required to insulate these pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.

s.    (i) In the women's restroom in the lobby, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is about 49 inches above the finish floor and higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to the height of this mirror's reflecting surface above the floor, the Plaintiff could not see his full face in this mirror from his wheelchair.   (iv) The action required to lower this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

t.    (i) In the women's restroom in the lobby, the operation of the door knob and lock require tight grasping, pinching, or twisting of the wrist.   (ii) The operation of this door knob and lock require tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff could not operate this door knob and lock with a closed fist or loose grip.   (iv) The action required to replace this door knob and lock is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

u.    (i) The juice machine dispenser handle in the breakfast area is higher than 48 inches above the finish floor.   (ii) This juice machine dispenser handle is about 54 inches

above the finish floor land higher than 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to the height of this dispenser handle above the floor, the Plaintiff could not get juice from this machine on his own from his wheelchair.   (iv) The action required to relocate this juice machine is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) In the breakfast area, the cups on the waffle making machine, the paper plates, and the bowl of sweetener packets, are all higher than 48 inches above the floor.   (ii) These items are all located higher than 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to their height above the floor, the Plaintiff could not reach any of these items while sitting in his wheelchair.   (iv) The action required to relocate these items is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) In the breakfast area, the yogurts in the mini fridge are on a shelf that is higher than 48 inches above the floor.   (ii) These yogurts are on a shelf that is higher than 48 inches above the finish floor where the reach depth is less than 20 inches and are outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) Due to their height above the floor, the Plaintiff could not reach these yogurts while sitting in his wheelchair.   (iv) The action required to relocate the shelving or these yogurts in the mini fridge is easily accomplishable and able to be carried out without much difficulty or expense.

x.   (i) In the breakfast area, to open the mini fridge door requires tight grasping and pinching.   (ii) This mini fridge door does not have an accessible handle, in violation of

Federal Law 2010, ADAAG §§ 606.4 and 309.4.   (iii) The Plaintiff could not open the door to this mini fridge with a closed fist or loose grip.   (iv) The action required to replace the door or to install a handle on this mini fridge is easily accomplishable and able to be carried out without much difficult y or expense.

**ACCESSIBLE GUESTROOM #103**

y.   (i) In accessible guestroom #103, the iron is located higher than 48 inches above the floor.   (ii) This iron is located higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) Due to its height above the floor, the Plaintiff could not reach this iron from his wheelchair.   (iv) The action required to relocate this iron or shelving is easily accomplishable and able to be carried out without much difficulty or expense.

z.   (i) In accessible guestroom #103, the low end of the curtain pull rod is higher than 48 inches above the floor.   (ii)   The low end of the curtain pull rod is about 56 inches above the finish floor and higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) Due to its height above the floor, the Plaintiff could not reach this curtain pull rod from his wheelchair.   (iv) The action required to replace this curtain pull road is easily accomplishable and able to be carried out without much difficulty or expense.

aa. (i) In accessible guestroom #103, the security latch on the door is located higher than 48 inches above the floor.   (ii) This security latch is about 61 inches above the finish floor and higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 404.2.7.   (iii) Due to its height above the floor, the Plaintiff could not reach this security latch, which security latch is outside of the reach range of an individual in a

wheelchair.   (iv) The action required to relocate this security latch is easily accomplishable and able to be carried out without much difficulty or expense.

bb.   (i) In the restroom of accessible guestroom #103, the roll-in shower compartment is less than 36 inches wide.   (ii) This alternate roll-in type shower compartment is less than 36 inches wide, the clear inside dimension measured at the center point of the opposing side, in violation of Federal Law 2010, ADAAG § 608.2.3.   (iii) Due to its lack of width clearance, the Plaintiff had difficulty using this roll-in shower.   (iv) The action required to to increase the clearance dimensions of this roll-in type shower compartment is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) In the restroom in accessible guestroom #103, the floor or ground surface of the shower has a slope steeper than 1:48 (2%).   (ii) The floor or ground surface of this shower is as steep as a bout 1:16.4 (6.1%) and steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 304.2.   (iii) Due to the slope of this shower floor, the Plaintiff's wheelchair was unstable in this shower.   (iv) The action required to reduce the slope of the floor of this shower is easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) In the restroom in accessible guestroom #103, the knee clearance depth under the lavatory sink is less than the minimum of 8 inches at 27 inches above the floor.   (ii) The knee clearance depth under this sink is less than 8 inches at a height of 27 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 306.2.3.   (iii) Due to this lack of knee clearance depth, the Plaintiff could not make a forward approach to this sink in his wheelchair.   (iv) The action required to increase the knee clearance depth under this sink is easily accomplishable and able to be carried out without much difficulty or expense.

16

ee.   (i) In the restroom in accessible guestroom #103, the knee clearance width at the sink is less than 30 inches.   (ii) A knee clearance width of a minimum of 30 inches for the sink is not provided, in violation of Federal Law 2010, ADAAG § 306.3.5.   (iii) Due to this lack of knee clearance width, the Plaintiff had difficulty using this sink.   (iv) The action required to increase the knee clearance width for this sink is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) In the restroom in accessible guestroom #103, the centerline of the toilet paper dispenser is not between 7 inches minimum and 9 inches from the front of the toilet.   (ii) The centerline of this toilet paper dispenser is behind the front of the toilet and not between a minimum of 7 inches and a maximum of 9 inches from the front of the toilet, in violation of Federal Law 2010 ADAAG § 604.7.   (iii) Due to the location of this toilet paper dispenser, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

gg.   (i) In the restroom in accessible guestroom #103, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to the height of this mirror's reflecting surface above the floor, the Plaintiff had difficulty using this mirror.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In the restroom in accessible guestroom #103, the operation of the door lock requires tight grasping, pinching or twisting of the wrist.   (ii) The operation of this door

lock requires tight grasping, pinching or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff could not operate this door lock with a closed fist or loose grip.   (iv) The action required to replace this door lock is easily accomplishable and able to be carried out without much difficulty or expense.

ii.   (i) In the restroom in accessible guestroom #103, the coat hook on the door is higher than 48 inches above the floor.   (ii) This coat hook is about 53 inches above the finish floor and higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from staying at the Quality Inn & Suites.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

jj.   (i) In the restroom in accessible guestroom #103, the handle of the hairdryer in its wall-mount is higher than 48 inches above the floor.   (ii) The handle of the hairdryer in its wall mount is located about 58 inches above the finish floor and higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) Due to its height above the floor, the Plaintiff tried but could not reach this hairdryer.   (iv) The action required to relocate this hairdryer and its wall-mount is easily accomplishable and able to be carried out without much difficulty or expense.

kk.   (i) In the restroom in accessible guestroom #103, the towel shelf is higher than 48 inches above the floor.   (ii) This towel shelf is about 56 inches above the finish floor and higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) Due to tis height above the floor, the Plaintiff tried but could not reach a towel on this shelf

from his wheelchair.   (iv) The action required to lower this towel shelf is easily accomplishable and able to be carried out without much difficulty or expense.

**POOL AREA**

ll.   (i) The cross slope of the walking surface around the pool is steeper than 1:48 (2%).   (ii) The cross slope of the walking surface around the pool is as steep as about 1:26.3 (3.8%) and steeper than the maximum allowed cross slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   (iii) The cross slope of the walking surface of the pool made the Plaintiff's wheelchair unstable while he was moving in his wheelchair.

mm.        (i) The change in level from the pool area to the pool restroom is greater than 0.25 inches.   (ii) This change in level is greater than the maximum allowed change of level without beveling, in violation of Federal Law 2010, ADAAG § 303.2.   (iii) Due to this change of level, the Plaintiff required assistance to move over it in his wheelchair.   (iv) The action required to bevel this change of level is easily accomplishable and able to be carried out without much difficulty or expense.

nn.   (i) In the pool restroom, the operation of the door lock requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of this door lock requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   (iii) The Plaintiff could not operate this door lock with a closed fist or loose grip.   (iv) The action required to replace this door lock is easily accomplishable and able to be carried out without much difficulty or expense.

oo.   (i) In the pool restroom, the rear wall grab bar for the toilet is less than 36 inches long.   (ii) This rear wall grab bar is only about 24 inches long and less than the minimum required length of 36 inches, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii)

The Plaintiff observed this rear wall grab bar, and it deters him from staying at the Quality Inn & Suites.   (iv) The action required to replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

pp.   (i) In the pool restroom, the lavatory drain and supply pipes under the sink are not insulated.   (ii) The drain and supply pipes under this sink are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5.   (iii) The Plaintiff observed this lack of insulation of the pipes under this sink, and it deters him from staying at the Quality Inn & Suites.   (iv) The action required to insulate the pipes under this sink is easily accomplishable and able to be carried out without much difficulty or expense.

qq.   (i)   In the pool restroom the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is about 48 inches above the finish floor and higher than 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to its height above the floor, the Plaintiff could not see his full face in this mirror's reflecting surface.   (iv) The action required to relocate this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

**FITNESS CENTER**

rr.   (i) The force need to open the door to the fitness center is more than 5 pounds. (ii) The force need to open the door to the fitness center is about 10 pounds and more than the maximum force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open the door to the fitness center, the Plaintiff required assistance to enter the fitness center.   (iv) The action required to adjust the force necessary

to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

ss.   (i) The dispenser point of the wall-mounted wipe container in the fitness center is higher than 48 inches above the floor.   (ii) The dispenser point of the wall-mounted wipe container is about 51 inches above the finish floor and higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) Due to its height above the floor, the Plaintiff could not reach a wipe while sitting in his wheelchair.   (iv) The action required to relocate this wipe container is easily accomplishable and able to be carried out without much difficulty or expense.

28.   All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

29.   The discriminatory violations described in paragraph 27 are not an exclusive list of the Defendant's ADA violations.   Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation to determine all of the areas of non-compliance with the Americans with Disabilities Act.

30.   The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.   The

individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

31.     Defendant has discriminated against the individual by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

32.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

33.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

34.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the

facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

35.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

36.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the Quality Inn & Suites and adjacent parking lot spaces, access aisles, and walkways to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendant is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require

the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*